IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARYANN CRUZ individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONNEXION POINT, LLC, a Utah Limited Liability Company, and INTEGRITY, LLC, f/k/a INTEGRITY MARKETING GROUP, a Texas Limited Liability Company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO TRANSFER VENUE**<br><br>Case No. 2:24-cv-00966-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Plaintiff Maryann Cruz brings this wage and hour employment action individually and on behalf of other similarly situated individuals against Defendants Connexion Point, LLC (CXP) and Integrity LLC (Integrity) for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Ms. Cruz requests to bring her claim as a collective action under 29 U.S.C. § 216(b), allowing all Customer Care Representatives (CCRs) (or others bearing similar job titles or job duties) to opt into this action as co-plaintiffs.

This matter comes before the court on the Defendants' motion to transfer under 28 U.S.C. § 1404(a) from this court to the Northern District of Texas, where Ms. Cruz resides and Integrity is headquartered. (ECF No. 30.) For the reasons discussed below, the court finds that the Defendants fail to show that convenience or the interest in justice weigh in favor of transfer. The court therefore denies the motion.

**BACKGROUND**

The Defendants employ remote, hourly CCRs, like Ms. Cruz, to provide over-the-phone customer service assistance to Medicare beneficiaries who have questions about their plans. (Am. Compl., ECF No. 37 at ¶ 4.)  Because CCRs can work from home, many of them reside in different states.  Specifically, Ms. Cruz resides in Levelland, Texas (ECF No. 30 at 1), while other CCRs reside in Mississippi and Utah, among other places.  (See Consent to Join, ECF No. 47-1; Pl.'s Opp'n Mot. Transfer, ECF No. 36 at 14–15 (citing List of Utah CCRs, ECF No. 36-9).)

Integrity is headquartered in Dallas, Texas, and provides life and health insurance and wealth management and retirement planning services.  (Am. Compl. ¶ 3.)  Integrity's directors, managers, in-house attorneys, and back-office functions, including its accounting, payroll, and human resources personnel, work out of the Dallas headquarters, while many of its other employees work remotely from around the country.  (Id.)  In January 2021, Integrity acquired CXP for its call center services, making the company Integrity's wholly owned subsidiary.  (Pl.'s Opp'n Mot. Transfer, ECF No. 36 at 6.)  Since the acquisition, CXP has exclusively provided its call center and technological services for Integrity, with 3,000 call center employees "connect[ing] the healthcare industry to consumers, and consumers to their healthcare …."  (Am. Compl. ¶ 2.)  CXP is headquartered in Sandy, Utah.  (Id. ¶ 3; ECF No. 30 at 8.)

Ms. Cruz alleges that CCRs are jointly employed by Integrity and CXP, citing to the companies' overlapping training programs, management, finances, and employment policies and agreements.  (Am. Compl. ¶ 4; ECF No. 36 at 14.)  For example, CCRs apply for their positions through CXP's website.  (ECF No. 36 at 4.)  After the CCRs are hired, CXP conducts parts of their onboarding and training, which requires the CCRs to enter into a Telework Agreement with CXP, complete CXP's online New Hire training course, and review and acknowledge CXP's

2

Employee Guidebook, which lays out the company's attendance, overtime, call avoidance, and schedule adherence policies.  (See Am. Compl. ¶¶ 61–64; ECF No. 31 at ¶ 9; CXP Telework Agreement, ECF No. 36-3; CXP Onboarding Letter, ECF No. 36-2.)  CXP's New Hire training course, which Ms. Cruz took part in, covers CXP's timekeeping system, Employee Guidebook, and regulatory and compliance policies.  (ECF No. 31 at ¶ 9.)  CXP's Telework Agreement includes an acknowledgement that employees "understand [that they are] entering into an agreement to perform work for Connexion Point, an Integrity Company (CXP) as an Employee." (Am. Compl. ¶ 62; ECF No. 36-3.)  CXP's Employee Guidebook identifies CXP as the CCR's employer and instructs CCRs to contact CXP's Utah-based HR team with any questions about their employment.  (Am. Compl. ¶¶ 36, 64; CXP Employee Guidebook, ECF No. 36-4; CXP Training Materials, ECF No. 36-7.)  CCR paystubs feature Integrity's name.  (Am. Compl. ¶ 41.) Integrity and CXP share the same Ethics Hotline for employees making complaints about their employment.  (Am. Compl. ¶ 34)

Ms. Cruz worked for the Defendants between September 10, 2024 and December 9, 2024.  (First Decl. Mandi Payne, ECF No. 31 at ¶ 6.)  Parts of her September 2024 onboarding and "training [were] conducted by two remote Integrity employees: her assigned training lead, Charma-Claire Wilson (a remote employee located in Fort Lauderdale, FL), and her sole supervisor, Jason Aversa (a remote employed located in Fort Lauderdale, FL)."  (ECF No. 31 at ¶ 10.)  Mr. Aversa managed Ms. Cruz's work and evaluated her performance throughout her employment.  (Id. at ¶ 11.)  "Additionally, Mr. Aversa was responsible for approving [any of Ms. Cruz's] requests for overtime …."  (Id.)

In February 2024, Ms. Cruz filed this action under 29 U.S.C. § 216(b), claiming that the Defendants failed to fully compensate her and other remote hourly employees in violation of the

FLSA.[1]  (Am. Compl. at ¶¶ 4, 20, 39.)  Specifically, Ms. Cruz alleges that the Defendants require their CCRs to perform compensable work off-the-clock outside of their scheduled shifts and during their unpaid meal periods, therefore withholding overtime pay for hours worked outside of the standard forty-hour week.  (Id. ¶¶ 11, 91, 93, 103, 105, 118, 123, 133, 137–38, 140, 164– 76.)

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Chrysler Credit Corp. v. Cty. Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991) (quoting 28 U.S.C. § 1404(a)).  Motions to change venue under 28 U.S.C. § 1404(a) are considered on "an individualized, case-by-case consideration of convenience and fairness."  Id. at 1516 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  When considering a motion to transfer,

> [a]mong the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Id. (quoting Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)); see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167 (10th Cir. 2010) (same).  The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the

---

[1] While the Amended Complaint also included a second claim for quantum meruit under Texas law, Ms. Cruz voluntarily dismissed this cause of action in response to the Defendants' pending motion to dismiss.  (See Am. Compl. ¶¶ 177–84; ECF No. 36 at 1–3.)

existing forum is inconvenient." Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992) (internal quotation marks omitted). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Id. at 966. The balance of factors must "strongly favor" transfer. Emps. Mut. Cas. Co., 618 F.3d at 1168.

"[W]hen reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." Butikofer v. Nygren, No. 2:16-cv-610-DN, 2016 WL 7190556, at *2 (D. Utah Dec. 12, 2016) (same).

## ANALYSIS

The Defendants assert that this action should be transferred to the Northern District of Texas. Ms. Cruz contends that the Defendants fail to meet their burden to prove that the convenience factors favor a transfer of venue. After careful consideration of the § 1404(a) factors, the court declines to transfer the case.

### I.    Deference to the Plaintiff's Choice of Forum

Turning to the first § 1404(a) factor, the Tenth Circuit instructs that "unless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." Scheidt, 956 F.2d at 965; see also Alter v. F.D.I.C., No. 2:13-cv-456-TS, 57 F. Supp. 3d 1325, 1335 (D. Utah 2014) (same). But in cases where the plaintiff does not reside in the district or where the facts giving rise to the lawsuit have no "material relation or significant connection" to the plaintiff's chosen forum, then a plaintiff's choice receives less deference. See Emps. Mut. Cas. Co., 618 F.3d at 1167–68; Butikofer, 2016 WL 7190556, at *2. "To overcome … [whatever] deference [is] given [to] the Plaintiff's choice of forum, a movant must do more than

show that their chosen venue bears equal relation to the operative facts as the plaintiff's choice."
Butikofer, 2016 WL 7190556, at *3 (citing Employs. Mut. Casualty Co., 618 F.3d 1168).

The court finds that Ms. Cruz's choice of forum is entitled to some deference, weighing against transfer, because the Defendants fail to show that the District of Utah is, as compared to the Northern District of Texas, both inconvenient for the parties and unrelated to the events giving rise to the claim.  Looking first at convenience of litigating in Utah, Ms. Cruz chose to file this action in the District of Utah with Utah-based counsel.  While she does not reside here, one of the two Defendants, CXP, is headquartered in Utah just outside of Salt Lake City, making it convenient for that Defendant and its in-state employees.  And Ms. Cruz plausibly alleges that some of the other CCRs, who are potential members of the collective action and/or witnesses, live in Utah.  Salt Lake City has a large international airport with direct flights to many major U.S. markets, including parts of Texas and Florida, where some potential witnesses reside. Therefore Ms. Cruz's choice of forum provides a reasonably convenient location for out-of-state party witnesses.

The Defendants contend that because Integrity is headquartered in Dallas, Texas, while Ms. Cruz resides in Levelland, Texas, litigating in the Northern District of Texas would be more convenient for both Ms. Cruz and Integrity.  But Ms. Cruz lives nearly six hours from Dallas, making the Dallas Division of the Northern District of Texas nearly as inconvenient for her as it will be for her to fly to Salt Lake City, Utah.  See United States v. Orozco-Rivas, 810 F. App'x 660, 668 (10th Cir. 2020) (collecting cases) (taking judicial notice of travel times on Google Maps).  And even though there is a federal court in Lubbock, Texas, less than an hour from Ms. Cruz, Dallas-based Integrity witnesses would need to drive five or more hours to attend proceedings there.  Moreover, if the case is transferred to the Lubbock Division of the Northern

District of Texas, then nearly all of the witnesses based outside of the major Texas cities would be required to take two flights. The court is therefore unpersuaded that either the Dallas or Lubbock Division of the Northern District of Texas is more convenient than this court is for the parties.

Ms. Cruz's choice of forum is also entitled to deference because at least some of the facts underlying her FLSA claim have a material connection to Utah. Ms. Cruz plausibly alleges that CXP runs the CCR call centers, helps to train and onboard CCRs, and sets and enforces employee policies for recording and logging call time. (Am. Compl. ¶ 30.) Her allegations that CXP and Integrity jointly employ the CCRs are consistent with statements Integrity made in its press release announcing its acquisition of CXP: 1) that "[t]ogether, Integrity and [CXP] will deliver on healthcare needs"; and 2) that "[CXP] handles … consumer interactions annually on behalf of their contracted carriers."[2] The Defendants do not dispute that CXP has employees and management personnel in Utah. Further, the Defendants do not dispute or present contrary evidence to Ms. Cruz's assertions that at least several of her relevant employment policies bear CXP's name and Utah address—not Integrity's. And while the Defendants argue that Ms. Cruz's "day-to-day interactions with her Integrity supervisors and trainers … are of greater relevance to her claims than the express words on the [CXP] documents and policies," this unsupported claim, which Ms. Cruz denies, implicitly recognizes that CXP's employment

---

[2] Integrity Acquires Connexion Point, One of the Nation's Largest Senior Health Insurance Call Centers Focused on Serving the Medicare Market, available at https://integrity.com/connexionpoint/ (last accessed May 21, 2025). The court takes judicial notice of the information available on Integrity's website. See, e.g., O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); Masterpiece Cakeshop Inc. v. Elenis, 445 F. Supp. 3d 1226, 1257 n.10 (D. Colo. 2019) (taking judicial notice of statement on party's website).

policies are at least somewhat relevant to her FLSA claim.  As a result, the court finds that CXP's role is relevant to Ms. Cruz's FLSA claim—in other words, the Defendants have not shown that all CCR oversight and management are conducted from Texas and/or by only Integrity workers.

The Defendants argue that there is no admissible evidence showing that events relevant to an FLSA violation took place in Utah because Ms. Cruz did not submit an affidavit authenticating her CXP employment policies, agreements, and practices.  (See Defs.' Reply Mot. Transfer, ECF No. 39 at 3.)  While Ms. Cruz cannot rely on unauthenticated documentary evidence to oppose a motion to transfer, the relevant statements Ms. Cruz relies on from these documents—which suggest that the Defendants jointly employ CCRs—are plausibly alleged in the Amended Complaint.  And as the party moving to transfer, it is the Defendants' burden to disprove Ms. Cruz's factual allegations with contradictory evidence.  But they have not done so. Indeed, Integrity's Director of People & Culture Business Partners concedes that Integrity and CXP jointly trained Ms. Cruz.  (ECF No. 31 at ¶ 9 (explaining that Ms. Cruz received online new hire training from both Integrity and CXP and that Ms. Cruz was trained under CXP's policies).) The Defendants provide no explanation for why CXP would be involved in training Ms. Cruz if it did not employ her.  And while the Defendants argue that CXP's policies originated in Dallas, from the Amended Complaint's quoted text from the CXP Telework Agreement and Employee Guidebook, the court can infer that CXP was likely involved in enforcing rules about its timekeeping practices, matters which are undisputedly relevant to Ms. Cruz's FLSA claim.

Based on the locations of all party witnesses and material events giving rise to Ms. Cruz's FLSA claim, the court finds that Utah is an equally (if not more) convenient district than the

Northern District of Texas, meaning that Ms. Cruz's choice of forum is entitled to some deference.

## II.    Convenience for Third-Party Witnesses

Tenth Circuit law is clear that the second § 1404(a) factor, "[t]he convenience of witnesses[,] is the most important factor in deciding a motion" to transfer.  Emps. Mut. Cas. Co., 618 F.3d at 1169 (citing Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993.  Because the Defendants are the ones seeking transfer, they—and not Ms. Cruz—carry the burden of demonstrating that the relevant witnesses and proof are located in Texas.  Id. at 1169.

The Tenth Circuit instructs that "to demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial ... [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" Emps. Mut. Cas. Co., 618 F.3d at 1169  (citing Scheidt, 956 F.2d at 966 (cleaned up); 6A Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, Federal Practice and Procedure, § 3851, at 227–28 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, ... the application for transferring the case should be denied....")).  Further, courts in this circuit evaluating this § 1404(a) factor regularly decline to consider the convenience for witnesses employed by the parties, because defendants are obligated to "procure the attendance of [their] own employees for trial." Vega v. Craftworks Restaurants & Breweries Grp., Inc., 2019 WL 6893038, at *3 (D. Colo. Dec. 18, 2019); see also Fuanya v. United States, 2022 WL 1027149, at *6 (D. Colo. Apr.

6, 2022) (same); <u>Miller v. Paschall Truck Lines, Inc.</u>, 2020 WL 4192497, at *3 (D.N.M. July 21, 2020) (same).

The Defendants claim that "nearly ever non-party witness is located in Texas," but they fail to specifically identify <u>any</u> non-party Texas-based witnesses. The only individuals that Defendants identify by name as relevant witnesses are Ms. Cruz's supervisors at Integrity, who reside in South Florida. Even if these Integrity employees were non-party witnesses—which they are not—the court notes that these individuals would need to fly several hours to reach either the Lubbock or Dallas Divisions in the Northern District of Texas or this District. <u>See</u> <u>Vega</u>, 2019 WL 6893038, at *3. Accordingly, the most important § 1404(a) factor weighs against transferring the case to the Northern District of Texas.

Further, the court notes that yet unidentified CCRs aside from Ms. Cruz, who may be non-party witnesses, live all around the country, making Utah as convenient as Texas. For example, one opt-in class member is from Mississippi. (<u>See</u> ECF No. 47.) And Ms. Cruz has plausibly alleged that some CCRs, who are potential class members and/or witnesses, reside in Utah. (Am. Compl. ¶ 45.) The Defendants, who presumably know the addresses of their employees, do not dispute that some CCRs live in Utah or provide evidence otherwise. To the contrary, by arguing that "most of the witnesses with direct, relevant interactions with Plaintiff reside outside of Utah," the Defendants acknowledge that there are relevant witnesses in this state. (ECF No. 30 at 12– 13.) And while the party opposing transfer, Ms. Cruz, can and has identified some Utah-based witnesses, the relevance of which the Defendants contest, it is the Defendant's burden—not Ms. Cruz's—to establish that Texas is more convenient for non-party witnesses.

Because the court has no reasonable basis to find that the Northern District of Texas is a more convenient forum for third-party witnesses, it finds that this factor weighs heavily against transfer.

### III.    Costs of Making Necessary Proof

The Defendants also fail to show that the cost of producing and making available necessary proof weighs in favor of transfer to the Northern District of Texas.  The Defendants first contend that the relevant "equipment utilized by Plaintiff in the performance of her duties (i.e. her home computer and other equipment in her home) is located within the District of Texas," implying that the Northern District of Texas would be a cheaper forum for discovery.  But the Defendants do not justify why the equipment must be produced, what the cost is to produce this evidence in Utah versus Texas, or why the Defendants cannot hire someone in Texas to inspect the equipment locally despite the case proceeding in Utah.  Because the vast majority of evidence is exchanged through electronic discovery, federal courts regularly find that there is little to no difference in cost to produce evidence across state lines.  E.g., Young v. Kiewit Corp., 2017 WL 9833513, at *2 (D. Colo. Oct. 26, 2017) (denying motion to transfer because defendant failed to show "why transport of the evidence it identified as relevant "would be relevant, particularly in this electronic age").  Moreover, the Defendants do not dispute that upon a CCR's termination, they must return any equipment, business records and files to CXP.

In sum, the record supports an inference that at least some evidence is already located in Utah while most other evidence can be easily exchanged across state lines.  (ECF No. 36 at 7.)  Because the Defendants provide no quantifiable evidence that litigating the case in Utah meaningfully exceeds the cost of litigating the case in Texas, they have failed to show that this convenience factor weighs in favor of transfer.  See Emps. Mut. Cas. Co., 618 F.3d at 1169

(rejecting assertion of increased costs unsupported by evidence (citing Pehr v. Sunbeam Plastics Corp., 874 F. Supp. 317, 321 (D. Kan. 1995))).

### IV.    Relative Advantages and Obstacles to a Fair Trial

The Defendants have not identified any obstacles to a fair trial in Utah, nor can the court discern any.  There is no cognizable issue regarding this court's personal jurisdiction over the Defendants—and even if there were, the Defendants waived this argument by failing to move to dismiss the case on these grounds.  (Mot. Dismiss, ECF No. 44 (moving to dismiss under Fed. R. Civ. P. 12(b)(6)); see e.g., Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir. 1992) ("If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses."); DISH Techs., LLC v. WebGroup Czech Republic, A.S., No. 2:23-cv-553-RJS-JCB, 2025 WL 562555, at *5 (D. Utah Feb. 20, 2025) (finding that defendants' pre-answer motion did not present the personal jurisdiction defense "at the first available opportunity, and [therefore] implicitly submitted themselves to the jurisdiction of the court").  The Defendants also do not dispute the court's ability to enforce judgment against them, and nothing in the record indicates that a judgment rendered in this District is any less enforceable than one rendered in the Northern District of Texas.  See Emps. Mut. Cas. Co., 618 F.3d 1170.  Because the parties are diverse and Ms. Cruz's claim arises under federal law, the court finds that either venue will provide a "fair" trial.

### V.    Difficulties That May Arise From Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics [for the court's consideration] are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." Emps. Mut. Cas. Co., 618 F.3d at 1169.

The median times from filing to disposition and filing to trial are shorter in the Northern District of Texas than they are in Utah. While these two docket congestion statistics weigh in favor of transfer, the court notes that this District's median time from filing to disposition or trial for civil cases is still lower than the national average, meaning that this District's time to disposition or trial is still short, relatively speaking.[3] Moreover, under the fourth relevant congestion statistic, the Northern District of Texas has significantly more weighted filings per judgeship (591) than the District of Utah (440) and the national average (481). This congestion statistic, which the Defendants fail to address, is important because it demonstrates how many relatively demanding and time-intensive cases each court has. Cases with weightier filings—like this one, which has a pending motion to dismiss—are likely have a longer time to disposition than a given district's average case. See Emps. Mut. Cas. Co., 618 F.3d at 1169; (Mot. Dismiss, ECF No. 44).[4] Finally, even though this District has 5.6% more pending cases per judgeship (500.2) than the Northern District of Texas (472), the court finds that the difference between the two Districts' caseloads is de minimis.

In sum, the court finds that this court's docket congestion statistics, relative to those of the Northern District of Texas, lean only slightly in favor of transfer to the Northern District of Texas.

## VI.    Advantage of Having Local Court Determine Questions of Local Law

As to the seventh and eighth § 1404(a) factors, Plaintiff's remaining claim arises under

---

[3] See U.S. Courts, National Judicial Caseload Profile (2024), available at: https://www.uscourts.gov/sites/default/files/2025-2/fcms_na_distprofile1231.2024.pdf.

[4] See U.S. Courts, Explanation of Select Terms (2024), available at: https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics.

federal—not Texas—law.  (Am. Compl. ¶¶ 148-177.)  This factor is therefore neutral.

**VII.    Interest of Justice**

Lastly, the Defendants argue that transferring the case is in the interest of justice and efficiency because this District will eventually find, in determining whetger to certify Ms. Cruz's proposed class, that it lacks personal jurisdiction over Integrity.[5]  (See ECF No. 30 at 15–16.)

Before it addresses this argument, the court provides an overview of the Fourteenth Amendment Due Process Clause's requirements.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985).  Thus, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State."  World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Pro Axess, Inc. v. Orlux Distrib'n, Inc., 428 F.3d 1270, 1276 (10th Cir. 2005) (same).  A defendant has sufficient contacts with the forum State if "[it] should reasonably anticipate being haled into court there … [without] offend[ing] traditional notions of fair play and substantial justice."  World–Wide Volkswagen, 444 U.S. at 297; see also Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 320 (1945).

In exploring the "minimum contacts" requirement, the Supreme Court has, distinguished between two types of personal jurisdiction: general and specific.  A court has general jurisdiction over claims against a corporation that is "at home" in the forum state.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).  LLCs, like Integrity and CXP, are "at

---

[5] Class certification procedures are governed by Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure.  "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Id.

home" in the states where they are organized and have their principal place of business.  See Daimler AG v. Bauman, 571 U.S. 117, 123 (2014); see also Hood v. Am. Auto Care, LLC, 21 F.4th 1216, 1221 (10th Cir. 2021).  By contrast, a court may only exercise specific jurisdiction if "the plaintiff's claims … arise out of or relate to the defendant's" forum contacts.  Daimler, 571 U.S. at 127.  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 262 (2017) (cleaned up).

The Defendants' personal jurisdiction "interest of justice" defense relies in part on the applicability of the Supreme Court's holding in Bristol-Myers.  In that case, a group of plaintiffs, many of whom did not live in California, brought a state law mass tort action in California state court for injuries allegedly caused by a drug manufactured and distributed by the defendant company, which was incorporated in Delaware and headquartered in New York.  Id. at 255.  The defendant, Bristol-Myers, moved to quash service of the plaintiffs' subpoena on the basis that the court lacked specific jurisdiction.  Id.  The Supreme Court concluded that the California state courts lacked personal jurisdiction over the out-of-state defendant for claims brought by the out-of-state plaintiffs because there were insufficient contacts between the defendant's conduct in connection with those claims and the State of California.  Id. at 264–66.  Accordingly, the Supreme Court advised that claims by "California and out-of-state plaintiffs" joined together should have been brought instead "in the States that have general jurisdiction over [the defendant]."  Id. at 268.

Ms. Cruz argues first that the "general jurisdiction" requirement set out in Bristol-Myers Squibb does not apply to collective action claims that are brought by out-of-state plaintiffs under

the FLSA.  Second, Ms. Cruz argues that the Defendants, by failing to move to dismiss on these grounds, waived any personal jurisdiction defense to her forthcoming effort to certify a class of CCRs.  Third and finally, Ms. Cruz contends that this court has general jurisdiction over both Defendants because she has adequately pled that Integrity is the alter ego of Utah-based CXP.

The court first addresses whether the general jurisdiction requirement from Bristol-Myers applies to FLSA collective actions.  While the Tenth Circuit has not yet ruled on the issue, this court recently determined that the Supreme Court's holding in Bristol-Myers applies to FLSA collective actions, meaning that "the court must have personal jurisdiction over the defendants as to each plaintiff's claims against them."  Madsen v. Sidwell Air Freight, No. 1:23-CV-8-JNP, 2024 WL 1160204, at *5 (D. Utah Mar. 18, 2024) (citing Fischer v. Fed. Express Corp., 42 F. 4th 366, 370 (3d Cir. 2022)).[6]  While the court finds this court's recent holding in Madsen persuasive, there are three reasons why this non-binding precedent is inapplicable to the court's due process analysis here.

First and foremost, as discussed above, the Defendants waived their argument that the court lacks general jurisdiction over Integrity by opting not to move to dismiss on these grounds.  (See ECF No. 44 (moving to dismiss under only Fed. R. Civ. P. 12(b)(6)); Fed. Deposit Ins. Corp., 959 F.2d at 175 (explaining that a personal jurisdiction defense is waived if not included in

---

[6] Federal courts in this Circuit and others have conversely held that "Bristol-Myers does not apply to divest courts of personal jurisdiction in FLSA collective actions."  Warren v. MBI Energy Servs., Inc., 2020 WL 937420, at *6 (D. Colo. Feb. 25, 2020) (citing Swamy v. Title Source, Inc., 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017), report and recommendation adopted in part, 2020 WL 5640617 (D. Colo. Sept. 22, 2020); see also Hunt v. Interactive Med. Specialists, Inc., 2019 WL 6528594, at *3 (N.D. W. Va. Dec. 4, 2019) (Explaining why FLSA collective actions should not be subject to the general jurisdiction requirement in Bristol-Myers); LaVigne v. First Cmty. Bancshares, Inc., 330 F.R.D. 293, 297 (D.N.M. 2019) (Distinguishing Bristol-Myers in the class action context).

defendant's answer or motion to dismiss).  There is no reason why the Defendants could not

raise and therefore preserve this defense when they filed their motion to dismiss.  Compare with

Cruson v. Jackson Nat'l Life Ins. Co., 954 F.3d 240, 250 (5th Cir. 2020) (finding personal

jurisdiction defense to class certification was not waived under Rule 12(g)(2) regarding the

diversity of class members who were unnamed at the time the defendant's Rule 12 motion to

dismiss was filed (citing In re Checking Account Overdraft Litig., 780 F.3d 1031, 1037 (11th

Cir. 2015)); see Quinn v. Specialized Loan Servicing, LLC, 414 F. Supp. 3d 1122, 1124 (N.D.

Ill. 2019) (finding defendant waived a personal jurisdiction argument in its opposition to class

certification by failing "to make that challenge in its prior motion to dismiss pursuant to Rule

12(b)(6)").  The Defendants have not addressed Ms. Cruz's argument that this defense was

already waived, nor can they.

Second, as discussed above, Ms. Cruz's claims arise out of or relate to CXP's contacts with

Utah, in addition to Integrity's contacts with Texas.  In other words, because CXP is

headquartered in Utah, and because the facts arise in part out of CXP's contacts with this forum,

transferring the case to the Northern District of Texas would mean that Defendants could later

move to dismiss or oppose class certification in any Texas-based action on the basis that the

Northern District of Texas lacks general jurisdiction over CXP.  Because there are multiple

Defendants that are "at home" in different states, transferring to a District with general

jurisdiction over one Defendant does not contribute to judicial efficiency.

Third and finally, Ms. Cruz persuasively argues that this court has general jurisdiction over

Integrity based on her allegations that Integrity is an alter ego of CXP—meaning that CXP's

"continuous and systematic" contacts with Utah are also Integrity's "continuous and systematic"

contacts with Utah.  (See ECF No. 36 at 2 n.2, 19–20.)

"Generally, personal jurisdiction over a subsidiary corporation does not give a state jurisdiction over the parent corporation, even if the parent wholly owns the subsidiary."  Lucero v. Carlsbad Med. Ctr., LLC, 2018 WL 3209406, at *3 (D.N.M. June 29, 2018).  But under the agency or alter ego theory of personal jurisdiction, courts in this district have denied motions to dismiss on the basis that subjecting Defendants to jurisdiction where their alter ego is headquartered does not "offend traditional notions of fair play and substantial justice."  SGI Air Holdings II, LLC v. Novartis Int'l AG, 239 F. Supp. 2d 1161, 1169 (D. Colo. 2003); see also Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd., 703 F.3d 488, 494 n.3 (10th Cir. 2012) ("Actions of alter egos confer jurisdiction on principal corporations because the nature of the alter ego gives it implied actual authority to act for the corporation."); Quimbey by Faure v. Cmty. Health Sys., Inc., 2015 WL 13651236, at *8 (D.N.M. 2015) (similar).

Usually, "a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under FRCP 12(b)(2), [meaning that] the plaintiff bears the burden of proving the existence of the grounds for jurisdiction," including an alter ego theory of liability. Associated Elec. & Gas Ins. Serv. Ltd. v. Am. Int'l Grp., Inc., No. 2:11-cv-368-DAK, 2012 WL 256146, at *2 (D. Utah Jan. 27, 2012) (citing OMI Holdings v. Royal Ins. Co. of Can., 149 F.3d 1086, 1091 (10th Cir. 1998)).  But here, as the movants, the Defendants must demonstrate that there is no basis for the court to rely on an alter ego theory of general jurisdiction over Integrity under Utah law.

Under Utah law, an alter ego theory of general jurisdiction requires that plaintiffs plausibly allege two elements.  First, a plaintiff must show that there is "such unity of interest and ownership [between two entities] that the separate personalities of the corporation no longer exist

....." <u>Norman v. Murray First Thrift & Loan Co.</u>, 596 P.2d 1028, 1030 (Utah 1979).  Second, the

party asserting jurisdiction under a theory of alter ego liability must show that "the observance of

the corporate form would sanction a fraud, promote injustice, or an inequitable result would

follow."  <u>Id.</u>

The Utah Court of Appeals has articulated eight factors that courts should consider when

evaluating claims predicated on a theory of alter ego liability:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate
> formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the
> dominant shareholder; (5) nonfunctioning of other officers or directors;
> (6) absence of corporate records; (7) the use of the corporation as a façade for
> operations of the dominant stockholder or stockholders; and (8) the use of the
> corporate entity in promoting injustice or fraud.

<u>Colman v. Colman</u>, 743 P.2d 782, 786 (Utah Ct. App. 1987).  The Utah Supreme Court has since

adopted the Colman factors "with the caveat that they are ... only non-exclusive considerations."

<u>Jones & Trevor Mktg., Inc. v. Lowry</u>, 284 P.3d 630, 637 (Utah 2012), <u>overruled in part on other</u>

<u>grounds by</u> <u>Salo v. Tyler</u>, 417 P.3d 581 (2018).  The Utah Supreme Court has also clarified that

"the first seven Colman factors relate to the formalities element of the alter ego test, while the

eighth Colman factor is merely a restatement of the fairness element."  <u>Id.</u>

"Although much of Utah law explaining the alter ego doctrine has been developed in the

context of a corporation and its shareholders, Utah courts have extended the doctrine to a parent

corporation and its subsidiary."  <u>Residential Warranty Servs., Inc. v. Goyo Media, LLC</u>, No.

2:20-cv-898-TC, 2025 WL 958760, at *26 (D. Utah Mar. 31, 2025) (citing <u>Salt Lake City Corp.</u>

<u>v. James Constructors, Inc.</u>, 761 P.2d 42, 47 (Utah Ct. App. 1988)). "In the parent-subsidiary

situation, the central focus of the formalities prong is the degree of control that the parent

exercises over the subsidiary and the extent to which the corporate formalities are observed."

<u>James Constructors</u>, 761 P.2d at 47 (citation omitted).  Favorably citing to a case from the United

States District Court for the District of Minnesota, the Utah Court of Appeals noted "eleven

factors relevant to deciding whether the parent exercises 'the necessary control' over its

subsidiary." Id. (citing United States v. Advance Mach. Co., 547 F. Supp. 1085, 1093 (D. Minn.

1982)); see also Residential Warranty Servs., Inc., 2025 WL 958760, at *26. Those factors are:

> (a) The parent corporation owns all or most of the capital stock of the subsidiary;
>
> (b) The parent and subsidiary corporations have common directors and officers;
>
> (c) The parent corporation finances the subsidiary;
>
> (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
>
> (e) The subsidiary has grossly inadequate capital;
>
> (f) The parent corporation pays the salaries and other expenses or losses of the subsidiary;
>
> (g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
>
> (h) In the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
>
> (i) The parent corporation uses the property of the subsidiary as its own;
>
> (j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest;
>
> (k) The formal legal requirements of the subsidiary are not observed.

Advance Mach. Co., 547 F. Supp. at 1093 (citing C M Corp. v. Oberer Dev. Co., 631 F.2d 536,

539 (7th Cir. 1980)); see also Residential Warranty Servs., Inc., 2025 WL 958760, at *26

(applying the eleven factors to find that plaintiff had established alter ego liability).

For the purposes of this motion, the court finds that the Defendants fail to challenge Ms.

Cruz's theory of alter ego liability. Ms. Cruz plausibly alleges facts sufficient to show

Integrity's control over CXP, including that: 1) CXP is Integrity's wholly owned subsidiary; 2)

Integrity finances some of CXP's payroll expenses; 3) there is overlap between the Defendants'

management, employees, and corporate policies; 4) CXP provides its services for Integrity and

no other business.  While the Defendants submit a Declaration from Ms. Payne, Integrity's

Director of People & Culture Business Partners, claiming that "CXP is separate and distinct

limited liability company from Integrity … [because] CXP is organized under Delaware law with

different operations, finances, and legal identities," this representation alone is conclusory,

merely parroting the statutory language without providing factual support.  (See ECF No. 31

¶ 5.)  Indeed, Ms. Payne's Declaration confirms several of Ms. Cruz's allegations that CXP is

controlled by Integrity.  (Compare id. at ¶¶ 10–11, with Am. Compl. ¶¶ 31, 33–34, 36.)  In any

event, the Defendants' reliance on Ms. Payne's Declaration alone is also insufficient to

undermine Ms. Cruz's theory of alter ego liability because the Defendants failed to

simultaneously provide an affidavit from a witness with personal knowledge of CXP's distinct

finances and corporate formalities.  Ms. Payne's only claimed expertise is "the records

maintained by Integrity relating to employee onboarding, training, and supervision, and other

documents as discussed below."  (ECF No. 31 ¶ 1.)

    In sum, even if the Defendants had preserved their personal jurisdiction argument, the court

is persuaded that it has general jurisdiction over both Defendants.  See In re Chinese-

Manufactured Drywall Prods. Liab. Litig., 2017 WL 5971622, at *20 (E.D. La. Nov. 30, 2017)

(Finding that the Bristol-Myers general jurisdiction rule does not apply where defendants had

enough contacts to the forum state to "hold them liable there in nationwide class actions");

Sanchez v. Launch Tech. Workforce Sols., LLC, 297 F. Supp. 3d 1360, 1366-67 (N.D. Ga. 2018)

(similar).

## CONCLUSION

    The court finds that all but one of the § 1404(a) factors weigh against transfer to the

Northern District of Texas.  Accordingly, the Defendants' motion (ECF No. 30) is DENIED.

DATED this 2nd day of June, 2025.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge