IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARYANN CRUZ, individually, and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CONNEXION POINT, LLC, a Utah limited liability company; and INTEGRITY, LLC, f/k/a INTEGRITY MARKETING GROUP, a Texas limited liability company, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS** <br><br> Case No. 2:24-cv-00966-TC-DBP <br><br> Judge Tena Campbell <br> Magistrate Judge Dustin B. Pead |

Before the court are the Plaintiffs' Motion for Conditional Certification (ECF No. 58) and the Defendants' Motion to Dismiss and to Strike Class Allegations (ECF No. 44). For the reasons stated below, the court grants the Plaintiffs' motion and grants in part and denies in part the Defendants' motion.

## BACKGROUND

Defendant Integrity, LLC (Integrity) provides life insurance, health insurance, and wealth management services. (First Amended Complaint (FAC) ¶ 3, ECF No. 37.) Defendant Connexion Point, LLC (CXP) is an Integrity company that "builds technology-enabled solutions for the healthcare industry." (Id. ¶ 2.) The Defendants employ "remote hourly employees who

1

provide over-the-phone customer service to customers" known as "Inbound Customer Care Representatives" (CCRs). (Id. ¶ 4.)

Named Plaintiff Maryann Cruz worked for the Defendants as a remote Licensed Healthcare Agent from September 2024 to December 2024. (Decl. Maryann Cruz, ECF No. 58-2 at ¶ 2.) In her position, Ms. Cruz was "responsible for assisting Medicare beneficiaries with their inquiries about insurance plans in their area." (Id. ¶ 3; see also FAC ¶ 4.) Ms. Cruz was paid an hourly rate for her services, which most recently was $18.00. (Cruz Decl. ¶ 4; FAC ¶ 40.)

Opt-in Plaintiff Stanleyesha Warren worked as a remote Licensed Healthcare Agent for the Defendants from August 2021 to December 2021 and again from August 2024 to December 2024. (Decl. Stanleyesha Warren, ECF No. 58-3 at ¶ 2.) Ms. Warren was paid an hourly rate, most recently of $21.00. (Id. ¶ 4.)

Ms. Cruz and Ms. Warren (the Plaintiffs) allege that the Defendants failed to pay the Plaintiffs and other similarly situated remote, hourly Healthcare Agents (Agents) for all overtime wages owed for the hours they worked. (FAC ¶¶ 164–76.) According to the Plaintiffs, the Defendants require the Agents to "have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts." (Id. ¶ 74; see also Cruz Decl. ¶ 10; Warren Decl. ¶ 10.) This startup and login process takes, on average, fifteen to twenty minutes a day. (FAC ¶ 97; Cruz Decl. ¶ 11; Warren Decl. ¶ 11.) Agents must also return from their lunch breaks early to begin the bootup process, which takes, on average, three to five minutes. (FAC ¶¶ 109–10; Cruz Decl. ¶ 15; Warren Decl. ¶ 15.) At the end of the day, the required shutdown and logout process takes another two to five minutes. (FAC ¶ 113; Cruz Decl. ¶ 16; Warren Decl. ¶ 16.)

According to the Plaintiffs, the timekeeping system is unavailable until after the Agents have connected to the Defendants' server. (FAC ¶ 100.) And until they have "loaded and logged into all of their computer systems," an Agent cannot take calls. (Id. ¶ 82.) If an Agent is clocked in but unavailable to take or make calls for too long, it can result in "poor performance scores and possible disciplinary action, up to and including termination." (Id. ¶ 78; see also Cruz Decl. ¶ 13; Warren Decl. ¶ 13.) Agents are scheduled for 40 hours in a week, and they cannot work overtime without approval. (FAC ¶ 79; Cruz Decl. ¶ 6; Warren Decl. ¶ 6.) Ms. Cruz alleges that she "was directed not to clock in prior to the start of her scheduled shift." (FAC ¶ 87.) The Plaintiffs specified that their supervisor, Charm Wilson, informed them that Agents are not permitted to clock in before they are ready to field incoming calls. (Cruz Decl. ¶ 8; Warren Decl. ¶ 8.)

At the start of their employment, the Plaintiffs and other similarly situated Agents were required to sign a "Telework Agreement." (FAC ¶ 6.) The Plaintiffs and similarly situated Agents were advised that failure to follow the Telework Agreement and other policies could result in disciplinary action, including termination. (Id. ¶ 63.) The Defendants evaluate the Agents' job performance through "call monitoring and various call metrics." (Id. ¶ 54; see also Cruz Decl. ¶ 14; Warren Decl. ¶ 14.) Indeed, the "Defendants' computer systems track the very moment that CCRs begin logging into the computer systems required to be ready and available to field calls at shift start time, regardless of whether CCRs are clocked in through the timekeeping system." (FAC ¶ 19.) The Defendants control the Agents' work schedules and duties. (Id. ¶ 69; Cruz Decl. ¶ 21; Warren Decl. ¶ 21.)

The Fair Labor Standards Act (FLSA) provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives

3

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Accordingly, the Plaintiffs assert that the Defendants' practices violate the FLSA and seek conditional certification for "[a]ll current and former remote, hourly Healthcare Agents who worked for Defendants at any time from June 25, 2022 to present." (ECF No. 58 at 5.) The Plaintiffs urge that the class should be certified because the "Plaintiffs have identified Defendants' common practice or policy of failing to pay wages at the federally required overtime rate of time and one-half for all hours worked in excess of 40 hours per work week" and the "Plaintiffs have identified Defendants' uniform policy or practice that requires all their hourly, remote Agents to perform off-the-clock work in violation of the FLSA." (Id. at 6.) The Plaintiffs further request that the court approve their proposed notice and opt-in period and order the Defendants to identify all putative class members.

In response, the Defendants argue that 1) the Plaintiffs did not work sufficient hours to qualify for overtime; 2) the Plaintiffs do not demonstrate a written companywide policy of failing to pay overtime; 3) the Plaintiffs have not shown a common or uniform practice of the Defendants not following their written policies; and 4) the Plaintiffs themselves have unique experiences. (ECF No. 71 at 6–8.)

If certification is appropriate, the Defendants urge that the collective should be limited to Agents 1) "working on behalf of the same client as" Ms. Cruz; 2) supervised by Ms. Cruz's supervisor; and/or 3) "whose timecards reflect at least 37.51 hours worked in a workweek in which they were required to be 'call ready' occurring within three years of the date on which the Court grants conditional certification." (Id. at 8.)

Separately, the Defendants assert that the Plaintiffs' claim under the FLSA for unpaid overtime should be dismissed. (ECF No. 44 at 10–15.) Specifically, the Defendants argue that Ms. Cruz "does not plausibly allege facts demonstrating that Defendants prohibited Plaintiff from clocking-in or otherwise reporting her alleged 'off-the-clock' work." (Id. at 5.) According to the Defendants, Ms. Cruz's allegation in the passive voice that she was "directed" not to record her time fails to save her claims from dismissal. (Id.)

For their part, the Plaintiffs contend that they have stated a plausible claim, and that the Defendants "conflate the pleading standards for Rule 12(b)(6) with summary judgment standards." (ECF No. 49 at 2.)

## LEGAL STANDARD

### I. Conditional Certification

Section 216(b) of the FLSA allows "any one or more employees" to bring an action to recover for unpaid wages or overtime compensation "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step process for evaluating whether employees are "similarly situated." See Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102–05 (10th Cir. 2001); Pichler v. Cotiviti, Inc, No. 2:23-CV-0884-AMA, 2024 WL 3089897, at *4 (D. Utah June 21, 2024).

Under the first step, "courts apply a lenient standard to determine whether the plaintiff has asserted 'substantial allegations that the putative class members were together victims of a single decision, policy, or plan,' such that sending notice is appropriate." Pichler, 2024 WL 3089897, at *3 (quoting Thiessen, 267 F.3d at 1102 (cleaned up)). The court's use of a "lenient standard" is appropriate because "plaintiffs have been unable to conduct discovery." Id. (citation omitted). At this stage, the court does not evaluate credibility or merit-based arguments.

Instead, "a plausibility-like standard for conditional certification is more appropriate as it allows the court to monitor and approve the notice sent out, while allowing the court to remain neutral on the merits." Madsen v. Sidwell Air Freight, No. 1:23-CV-0008-JNP, 2024 WL 1160204, at *3 (D. Utah Mar. 18, 2024) (cleaned up).

The second step, which occurs after notice and discovery, requires the court to "'utilize[] a stricter standard' to determine whether the plaintiffs are similarly situated so that the action may continue as a collective action." Pichler, 2024 WL 3089897, at *3 (citing Thiessen, 267 F.3d at 1103).

## II.   Failure to State a Claim

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" Strauss v. Angie's List, Inc., 951 F.3d 1263, 1266 (10th Cir. 2020) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted. We accept all well-pled factual allegations as true and view these allegations in the light most favorable to the nonmoving party." Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010) (quotation and citation omitted).

## ANALYSIS

I. **Conditional Certification**

As noted above, the Plaintiffs seek conditional certification under § 216(b) of the FLSA for "[a]ll current and former remote, hourly Healthcare Agents who worked for Defendants at any time from June 25, 2022 to present." (ECF No. 58 at 5.) In evaluating the Plaintiffs' pre-discovery motion for conditional certification, the court applies the "lenient" first step of the Tenth Circuit's two-step process to determine whether employees are similarly situated. Pichler, 2024 WL 3089897, at *3.

In Pichler v. Cotiviti, a recent case in this court that also focused on a remote call center, the court granted conditional certification, finding that "[t]he allegations of the Complaint and the factual assertions made in the declarations of Plaintiff and Ms. Abrams plausibly support a preliminary finding that Plaintiff and some other RRAs are similarly situated sufficient to support notice." Id. at *5.

Many of the reasons on which the court in Pichler relied in granting conditional certification are also present here. The court noted that the "Plaintiff asserts that she and all other RRAs were subject to a practice in which they had to engage in up to 30 minutes of off-the-clock work before they could clock in to begin their jobs. Only then, according to Plaintiff, was she and the other RRAs permitted to clock in." Id. Here, the Plaintiffs allege that they and others in the proposed collective had to perform time-consuming bootup processes before they could clock in at the start of their shifts and before the end of their lunch breaks. (FAC ¶¶ 74, 97, 109–10; Cruz Decl. ¶¶ 10–11, 15; Warren Decl. ¶¶ 10–11, 15.) They also had to perform the required shutdown process after the end of their shifts. (FAC ¶ 113; Cruz Decl. ¶16; Warren Decl. ¶ 16.)

7

Additionally, in Pichler, the "Plaintiff allege[d] that she should have been paid for this required additional pre-shift work and that, because she and the other RRAs were scheduled to work a five-day 40-hour week, she should have been paid at an overtime rate." Pichler, 2024 WL 3089897, at *5. Here, Ms. Cruz attests that she "often worked more than eight (8) hours per day, forty (40) or more hours per week, and …was routinely not paid by Defendants for all overtime hours." (Cruz Decl. ¶ 5.) Ms. Warren makes the same allegations. (Warren Decl. ¶ 5.) And the Plaintiffs allege that other Agents also worked unpaid overtime hours for the same reasons. (FAC ¶ 10.) As in Pichler, the allegations are sufficient for the court to find that the employees in this matter are similarly situated.

Pichler also addresses how to handle factual disputes at this stage. "To the extent that [Defendant] wishes to factually rebut Plaintiff's assertions, it may do so at the second stage of the approach accepted in Thiessen and applied here. At this initial conditional certification stage, the merits of Plaintiff's claims and, in turn, [Defendant's] asserted factual rebuttals are not to be considered." Pichler, 2024 WL 3089897, at *5 n.42. The court agrees that factual disputes about whether the Plaintiffs worked sufficient hours to qualify for overtime are more appropriate for the second step in the Tenth Circuit's two-step process. At this stage, the Plaintiffs have sufficiently alleged that they worked unpaid overtime hours. (See FAC ¶ 118.)

While the Defendants recognize that Pichler is analogous to this case, they argue that Pichler provides reasons for denying certification for a companywide collective. (ECF No. 71 at 26.) Specifically, the Defendants note that the court in Pichler did not certify the companywide collective, but rather a narrower collective limited to the facility where the plaintiff was trained and supervised. (ECF No. 71 at 26); see Pichler, 2024 WL 3089897, at *6–7. Relying on

Pichler, the Defendants argue that if a collective is certified, it should be limited to the Plaintiffs' "specific client team and supervisor." (ECF No. 71 at 27.)

But the facts of this case distinguish it from Pichler in this regard. In Pichler, the court found that the plaintiffs had not adequately alleged that employees outside of the office where the plaintiffs worked and were trained were subject to the same limitations on clocking their time. Pichler, 2024 WL 3089897, at *6. But here, the Plaintiffs are not tied to a particular call center, and all Agents are managed centrally from CXP's headquarters in Sandy, Utah. (ECF No. 58 at 4–5.) Limiting the proposed collective to the Plaintiffs' client team and supervisor is not appropriate in this context.

The court accepts the Plaintiffs' proposed notice (ECF No. 58-1) with the following two modifications: 1) the notice must include the requirement to preserve evidence; and 2) the notice must inform members that they could incur costs. See Saenz v. Rod's Prod. Servs., LLC, No. 2:14-CV-00525-RB-GBW, 2015 WL 12866985, at *2 (D.N.M. Mar. 6, 2015) ("In the Tenth Circuit, courts regularly include a notice that plaintiffs may have to pay court costs if they do not prevail."). Notice may be sent by mail and email. The Defendants must provide the Plaintiffs with the full name, last known address, telephone number, email addresses, and dates and location of employment of each person falling within the certified class of putative opt-in plaintiffs.

The court approves the 60-day opt-in period. But the court denies the Plaintiffs' request to issue a reminder email. See Stenulson v. ROI Sols., LLC, No. 2:20-CV-00614-DBB-JCB, 2022 WL 294867, at *5 (D. Utah Feb. 1, 2022) (denying a request for a reminder notice); Saenz, 2015 WL 12866985, at *2 (noting that courts in the Tenth Circuit generally deny requests for reminder notices). The Plaintiffs also request equitable tolling "to the extent that notice to the

Collective is substantially delayed." (ECF No. 58 at 26.) The court preserves the issue but finds no reason to grant equitable tolling at this time.

## II.     Failure to State a Claim

The Plaintiffs have "agreed to dismiss with prejudice [their] state law quantum meruit claim." (ECF No. 49 at 2.) They have also abandoned their Rule 23 class allegations. (Id.) Accordingly, the court dismisses the Plaintiffs' quantum meruit claim and strikes the Plaintiffs' Rule 23 class allegation.

The remaining issue is the Defendants' motion to dismiss the Plaintiffs' FLSA claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants allege that the Plaintiffs have failed to sufficiently state a claim under the FLSA for unpaid overtime because they do not "plausibly allege facts demonstrating that Defendants prohibited Plaintiff from clocking-in or otherwise reporting her alleged 'off-the-clock' work." (ECF No. 44 at 5.) Although Ms. Cruz claims that she "was directed not to clock in prior to the start of her scheduled shift" (FAC ¶ 87), the Defendants argue that this "conclusory allegation, in passive voice fails to sufficiently plead that such 'direction' was provided by Defendants or any of Defendants' employees, much less by which Defendant." (ECF No. 44 at 5.) For support, Defendants cite to Wassom v. Wright, a case in which the court dismissed the plaintiff's claim without prejudice in part because the plaintiff "use[d] the passive voice throughout her complaint, leaving the Court to speculate." No. 2:16-CV-01143-JNP-PMW, 2017 WL 4737256, at *6 (D. Utah Oct. 19, 2017).

The court is not persuaded. Even accepting the Defendants' argument about the use of passive voice, the Plaintiffs allege sufficient facts to show that they were prevented from recording their off-the-clock work related to starting up and shutting down the necessary

10

systems. Specifically, the Plaintiffs allege that they and other Agents were scheduled for 40 hours in a week, prohibited from working unapproved overtime, and required to be logged into their computer systems at the beginning of their shifts. (FAC ¶¶ 79, 82–86.) The time spent on the boot up process therefore would necessarily entail working overtime. (Id. ¶¶ 109–10.) Additionally, the Plaintiffs allege that the Agents have to perform the boot up procedures in order to access the online timekeeping system. (Id. ¶ 100.) This fact would also necessarily entail off-the-clock work.

Second, the Defendants argue that the Plaintiffs' failure to clock in or out for off-the-clock work destroys their FLSA claim, since "the failure to pay overtime is not a FLSA violation" where "the employee fails to notify the employer through the established overtime record-keeping system." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012).

This argument is also unconvincing. The Plaintiffs have alleged sufficient facts to show that the Defendants had constructive notice of the Agents' off-the-clock work. Specifically, the Plaintiffs allege that the "Defendants' computer systems track the very moment that CCRs begin logging into the computer systems required to be ready and available to field calls at shift start time, regardless of whether CCRs are clocked in through the timekeeping system." (FAC ¶ 19.) Additionally, given their familiarity with their own systems, the Plaintiffs allege that the "Defendants knew or should have known how long it takes CCRs to complete their off-the-clock work." (Id. ¶ 18.) The Plaintiffs have therefore successfully pled that the Defendants had at least constructive knowledge that the Agents were working off-the-clock.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. The Plaintiffs' Motion for Conditional Certification (ECF No. 58) is GRANTED.

2.      The Defendants' Motion to Dismiss and to Strike Class Allegations (ECF No. 44) is GRANTED IN PART and DENIED IN PART.  The court dismisses the Plaintiffs' quantum meruit claim and Rule 23 class action allegations but denies the Defendants' request to dismiss the Plaintiffs' FLSA claim.

3.      The Plaintiffs must edit their proposed notice (ECF No. 58-1) to include two additions: 1) the notice must include the requirement to preserve evidence; and 2) the notice must inform members that they could incur costs.  The proposed notice is otherwise accepted. Notice may be sent by mail and email.  The court approves a 60-day opt-in period, denies the Plaintiffs' request to issue a reminder email, and preserves the issue of equitable tolling.

4.      The Defendants must provide the Plaintiffs with the full name, last known address, telephone number, email addresses, and dates and location of employment of each person falling within the certified class of putative opt-in plaintiffs within 14 days of this order.

DATED this 3rd day of November, 2025.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge